UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIELLE J. PLAIR,

    Plaintiff,

v.

TIMOTHY RICKERT,

    Defendant.

_____/

2:21-cv-12275
Paul D. Borman
United States District Judge

## ORDER GRANTING DEFENDANT RICKERT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF HIS DISCIPLINARY ACTIONS AT TRIAL (ECF No. 43)

Now before the Court is Defendant Timothy Rickert's Motion to Exclude evidence of his disciplinary actions at trial pursuant to Fed R. Evid. 402, 403, and 404(b)(1) filed on September 28, 2023. (ECF No. 43). On October 6, 2023, Plaintiff filed her Response to Defendant's motion. (ECF No. 50). On October 11, 2023, Defendant filed a Reply in support of his motion. (ECF No. 52).

The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of these matters; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

1

## II. STATEMENT OF FACTS

**A. Kalieb Solomon's suicide and Plaintiff's current claim.**

On September 12, 2019, Kalieb Solomon was convicted of three counts of armed robbery in state court. (ECF No. 43, PageID.2540). Shortly thereafter, he was returned to his cell at the Macomb County Correctional Facility where he committed suicide by wrapping a damp towel around his neck and hanging himself. (*Id*.) While this was occurring, Solomon's cellmates, hearing Solomon gasping and shouting, yelled to get the attention of the correctional officers. (ECF No. 50, PageID.2769). Plaintiff alleges that Defendant Rickert, then a correctional officer at the prison, answered the intercom system and, when the inmates told Rickert that Solomon was trying to kill himself, Rickert said "there's nothing I can do about it." (ECF No. 50, PageID.2769). When correctional officers checked on Solomon the next morning, he was already dead. (ECF No. 50, PageID.2770).

Plaintiff brought several claims against multiple Defendants, all stemming from Solomon's suicide. At this point in the proceeding, however, the only claim that remains is Plaintiff's Fourteenth Amendment claim against Rickert for failing to take appropriate action to prevent Solomon's suicide. (ECF No. 43, PageID.2542).

**B. Rickert's disciplinary actions.**

During his time as a correctional officer at Macomb Correctional Facility, Rickert received two disciplinary actions. The incidents giving rise to these disciplinary actions are as follows.

Rickert's first disciplinary action occurred on December 22, 2015, when Rickert was interviewed as part of an investigation of another corrections officer accused of having inappropriate contact with female inmates. (ECF No. 43, PageID.2541). Rickert told investigators that he had not given that correctional officer any information about the cells where the alleged misconduct occurred, but text messages revealed that Rickert had told the correctional officer what areas of those cells were visible on the security cameras. (ECF No. 43, PageID.2541). Rickert was suspended for forty-five days without pay for this and for various violations of the Macomb County Sheriff's Office Rules and Regulations. (*Id.*)

Rickert's second disciplinary action occurred on July 5, 2016, when Rickert was reprimanded for failing to complete an incident report after a female inmate exposed her breasts to him while he was doing a security round of the maximum-security cells. (*Id.*) Rickert seeks to exclude evidence of both disciplinary actions under Fed R. Evid. 402, 403, and 404(b). (ECF No. 43, PageID.2542).

While the full extent of the disciplinary actions and their accompanying reports are voluminous, Plaintiff claims that, through reading these reports and

deposing Rickert about his two disciplinary actions, she has learned the following relevant information about Defendant:

- During a rape investigation of Defendant's colleague, an internal affairs officer opined that Defendant was "not truthful" and "outright deceitful." **(Ex. C, Rickert, pp. 56-57; Ex. D, p. 29)**;

- Defendant has a history of intentionally violating internal policies such as using a personal cell phone while on duty. **(Ex. C, Rickert, pp. 40-42; Ex. D, p. 23)**;

- Defendant has a history of lying during *Garrity* interviews. **(Ex. C, Rickert, pp. 49, 56-57; Ex. D, p. 29)**;

- Defendant has a history of sleeping on shift and then lying about whether he was sleeping on shift. **(Ex. C, Rickert, pp. 52-53)**;

- Defendant has a history of unsatisfactory performance for being too lax with inmates. **(Ex. C, Rickert, pp. 62-63; Ex. E)**; and,

- He has a history of interfering with investigations, failing to report misconduct, abusing his position, disclosing confidential information to suspended officers, unsatisfactory job performance, and performing inadequate security rounds. **(Ex. C, Rickert, pp. 59-63)**.

(ECF No. 50, PageID.2770).

Defendant Rickert brings this present motion to prevent Plaintiff from presenting any evidence pertaining to his two disciplinary actions, which encompass the six findings Plaintiff listed above, at trial.[1] (ECF No. 43, PageID.2542).

---

[1] Defendant's motion seeks the exclusion of "all evidence of his disciplinary actions at trial" (ECF No. 43, PageID.250), but his supporting brief specifically notes only the two recorded disciplinary actions attached to his personnel file. In contrast,

4

## III. ANALYSIS

In the Sixth Circuit, to determine whether evidence of prior bad acts, like the acts giving rise to Rickert's disciplinary actions, are admissible at trial, courts must:

> (1) "make a preliminary determination as to whether sufficient evidence exists that the prior act occurred," (2) "make a determination as to whether the 'other act' is admissible for a proper purpose under Rule 404(b)," and (3) "determine whether the 'other acts' evidence is more prejudicial than probative under Rule 403."

*United States v. Poulsen*, 655 F.3d 492, 508 (6th Cir. 2011). The Court grants Defendant Rickert's motion because his conduct has failed to satisfy prongs two and three of this test.

**A. There is sufficient evidence that the prior acts described in the disciplinary actions occurred.**

As to prong one, the Court finds that there is sufficient evidence that the prior acts described in the disciplinary actions occurred. The court bases this conclusion on the disciplinary records of each incident attached as Exhibit 1 and Exhibit 2 to Defendant Rickert's motion. (ECF No. 43-2, 43-3). Both incidents appear to have

---

Plaintiff's Response in opposition to Defendant's motion refers both to Defendant Rickert's two larger disciplinary actions, as well as the six bullet-pointed findings she alleges to have discovered through deposing Rickert about these disciplinary actions and through reading the disciplinary reports. (ECF No. 50, PageID.2770). Since these six findings all stem from Plaintiff's two recorded disciplinary actions, the Court assumes that Defendant's motion seeks the exclusion of these findings as well.

5

been thoroughly investigated by Macomb County Correctional Facility internal affairs officers, and the Court finds no reason to dispute their findings at this stage.

**B. Plaintiff has not identified a proper purpose by which the disciplinary actions can be admitted.**

As to prong two, the Court finds that Plaintiff has not identified a proper purpose for introducing evidence of the disciplinary actions. Plaintiff offers two purposes for admitting this evidence: (1) under Fed. R. Evid. 404(b)(2) to show absence of mistake or lack of accident; and (2) as admissible habit evidence under Fed. R. Evid. 406. Both arguments fail for the forthcoming reasons.

> *i.   The disciplinary actions do not show an absence of mistake or lack of accident.*

Pursuant to Fed R. Evid. 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But, under Fed. R. Evid. 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Plaintiff first argues that Rickert's disciplinary actions are admissible as evidence of both a lack of accident and an absence of mistake. (ECF No. 50, PageID.2776). Plaintiff contends that the two disciplinary actions show Rickert's "track record of dishonesty and rule violations" and "are relevant to his knowledge

6

that Solomon was committing suicide and will undercut [Rickert's] claim that his failure to save [Solomon's] life was an accident or the result of a miscommunication." (*Id.*) To the extent that Defendant Rickert argues that Solomon's suicide was an accident or the result of a miscommunication, the Court does not find that Rickert's disciplinary actions disprove this.

In Rickert's first disciplinary action, his primary violation was lying to the investigators about the extent of the information he gave another correctional officer who was the subject of an internal investigation. (ECF No. 43-2, PageID.2576). In the second, Rickert's infraction was failing to report an incident in which a female inmate exposed her breasts to him. (ECF No. 43-2, PageID.2576). These two disciplinary incidents are not related to the issues presented in this case. Neither incident involved Rickert failing to properly respond to an inmate's urgent medical needs; and neither disciplinary action helps prove that Solomon's suicide was not an accident or the result of a miscommunication. Accordingly, this evidence cannot be admitted under Rule 404(b)(2) to prove absence of mistake or lack of accident.

> ## ii. *Plaintiff has not established that Rickert has a habit of violating rules and lying to internal investigators.*

Plaintiff next argues that Rickert's disciplinary actions constitute admissible habit evidence under Fed. R. Evid. 406. (ECF No. 50, PageID.2772). Rule 406 states that "[e]vidence of a person's habit or an organization's routine practice may be

7

admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." But Courts must be:

> [C]autious in permitting the admission of habit or pattern-of-conduct evidence under Rule 406 because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes.

*Bell v. Consol. Rail Corp.*, 299 F. Supp. 2d 795, 800–01 (N.D. Ohio 2004) (quoting *Simplex, Inc. v. Diversified Energy Systems*, 847 F.2d 1293 (7th Cir. 1988)).

To that end, "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 549 (6th Cir. 2003) (quoting *Simplex*, 847 F.2d at 1293).

Plaintiff contends that Rickert's two disciplinary actions show Rickert's habit of "violat[ing] rules and then [lying] about violating those rules to internal affairs officers." (ECF No. 50, PageID.2773). Plaintiff lists five instances contained within Defendant Rickert's two disciplinary actions, which Plaintiff argues are evidence of this habit:

> (1) When another correctional officer was being investigated for sexual misconduct, Rickert lied to investigating officers about the "content and extent of his conversations" with that other correctional officer.

8

(2) During this same investigation, the officer who interviewed Rickert concluded that Rickert was "not truthful" and "was outright deceitful."

(3) Rickert instructed female inmates to harass a new correctional officer during his first shift and later minimized his behavior to investigating officers.

(4) Rickert sent text messages referring to him sleeping on shift and, when confronted about the messages by investigating officers, Rickert "falsely claimed that they were meant as jokes."

(5) An inmate 'flashed' her breasts to Rickert, and he failed to file an incident report as required by the rules. He only admitted this occurred after the inmate told internal affairs officers about the incident.

(ECF No. 50, PageID.12275).

Despite Plaintiff's arguments to the contrary, these five incidents do not contain the requisite level of frequency or specificity needed to establish that Defendant Rickert has a habit within the definition of Fed. R. Evid. 406.

First, Plaintiff has not established that Rickert violates rules and lies to internal affairs officers about doing so with sufficient frequency to constitute a habit. Consider again the five instances Plaintiff lists above.

Instances three and five are not evidence of this habit because Rickert did not lie to investigators in either instance. In instance three Rickert simply downplayed the severity of his conduct and in instance four Rickert did not lie about the 'flashing' he merely failed to report it. Next, instances one and two refer to the same single occasion in which Rickert lied to investigators. Instance one shows that Defendant Rickert lied to investigators about the nature and extent of the conversations he had

9

with the correctional officer being investigated, and instance two shows that, based on this lie, an internal affairs officer characterized Rickert as untruthful. Lastly, instance five depicts another separate occasion in which Defendant lied to investigators about text messages referring to him sleeping on duty.

Thus, in total, Plaintiff has offered only two distinct instances of Defendant Rickert violating rules and then lying to investigators about doing so. These two incidents, both of which occurred several years before Solomon's suicide, are not frequent enough to establish a habit.

Next, violating rules and lying to internal affairs officers about doing so is too broad of a stimulus to effectuate a habitual response. *United States v. Moore*, 2011 WL 3497100 (E.D. Mich. Aug. 10, 2011) (Ludington, J.,) is illustrative of this point. There, a criminal defendant sought the exclusion of evidence of her past tax fraud at her trial for conspiracy to commit insurance fraud. *Id*. at *1. The court, in holding that defendant's 126 previous incidents of tax fraud were not indicative of a habit, noted:

> One cannot have a habit of filing false tax returns any more than one can have a habit of selling narcotics or committing assaults. In order to be admissible under Rule 406, the evidence must demonstrate a very specific and precise response to a particular stimulus. There is no such evidence here.

*Id.* at *3.

Just as one cannot have a semi-automatic habit of selling narcotics, of committing assaults, or of filing false tax returns, one also cannot have a semi-automatic habit of violating rules and lying to officers about doing so. This is simply not a "specific and precise response to a particular stimulus." *Id*.

To further underscore this point, consider Advisory Committee Note to Fed. R. Evid. 406, which gives examples of true habits such as "going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving." Fed. R. Evid. 406 Advisory Committee's Note. These are all examples of semi-automatic responses to hyper-specific stimuli that contrast sharply with Plaintiff's argument that Defendant has a general pattern of violating rules and lying to internal affairs officers about them.

For all of the above reasons, the Court finds that the disciplinary actions are not admissible as habit evidence under Fed. R. Evid. 406.

**C. The probative value of Rickert's disciplinary actions is substantially outweighed by the danger that it would be unfairly prejudicial to him.**

Lastly, as to prong three, even if Plaintiff had identified a proper purpose for admitting Rickert's disciplinary actions they would still be inadmissible under Fed. R. Evid. 403 since their probative value is substantially outweighed by their unfairly prejudicial effect.

Defendant Rickert first argues that evidence of his disciplinary actions is not relevant to the case at hand and is thus inadmissible under Fed. R. Evid. 402. (ECF

11

No. 43, PageID.2543). Under Fed. R. Evid. 401, evidence is relevant if it makes a fact of consequence "more or less probable than it would be without the evidence." "[E]ven if a district court believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has the slightest probative worth." *United States v. Whittington*, 455 F.3d 736, 738–39 (6th Cir. 2006) (internal quotation marks omitted).

Rickert contends that, since the only "issue left remaining in this case is whether Rickert was deliberately indifferent to Solomon's serious medical needs *on the date of the incident* … [a]ny disciplinary actions that occurred before or after the underlying incident" are irrelevant. (ECF No. 43, PageID.2543–44) (emphasis in the original).

Rickert is mistaken. The Macomb County Sheriff's Office Rules and Regulations exist, at least in part, to ensure that inmates at the correctional facility receive proper care from the correctional officers. Therefore, the fact that Rickert has been disciplined on two prior occasions for violations of these rules suggests that, on those occasions, Rickert acted in a manner that might have prevented inmates from receiving proper care. That this occurred in the past would tend to make it at least slightly more probable that Rickert's actions may have prevented Solomon from receiving proper care on the night of his suicide.

12

For example, in the December 2015 disciplinary action, investigators found that Rickert had sent texts to another correctional officer referring to him sleeping on duty. (ECF No. 43-2, PageID.2573). The Court finds that the fact that Rickert slept on duty in the past makes it at least an iota more likely that, at some point in the future, he would act indifferently to the medical needs of an inmate as compared to a correctional officer who had never fallen asleep while on duty.

Nonetheless, as Rickert notes, relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403. Unfair prejudice exists when evidence creates "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Hillman Power Co., LLC v. On-Site Equip. Maint., Inc.*, 2023 WL 3244830, at *2 (E.D. Mich. May 4, 2023) (Ludington, J.,) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Here, the Court is especially concerned that the facts of this case may enflame the jury's emotions and cause them to base their verdict on improper considerations. Kalieb Solomon's death is a tragedy and at trial the jury may hear the graphic testimony of inmates who heard Solomon's choking as he committed suicide. With that in mind, while this Court finds that Rickert's disciplinary actions tend to make

13

it slightly more likely that Rickert acted with deliberate indifference towards Solomon's medical needs at the time of his suicide, the probative value of this evidence is quite low. The disciplinary incidents occurred several years ago and neither involved Rickert failing to properly address an inmate's urgent medical needs.

In contrast, given the emotional nature of this case, admitting this evidence would create a high risk of unfair prejudice. Were the jury to hear about a Rickert's prior infractions in a trial about an inmate's suicide, there is a substantial risk that the jury might find Rickert liable based only on these prior infractions, which would be in improper consideration. Accordingly, the Court finds that the probative value of the disciplinary actions is substantially outweighed by the danger of unfair prejudice, and they are inadmissible under Fed R. Evid. 403.

**D. The Court's holding is limited to Plaintiff's case-in-chief and does not preclude Plaintiff from using the disciplinary actions to impeach Rickert.**

Finally, the Court notes briefly that, although evidence of Rickert's disciplinary actions is inadmissible as to Plaintiff's case-in-chief under Fed. R. Evid. 403 and 404(b), the Court's holding does not prohibit Plaintiff from questioning Rickert about these disciplinary actions to impeach his testimony were he to testify at trial. Under Fed R. Evid. 608(b), on cross-examination, the Rule 404(a) prohibition against character evidence notwithstanding, the Court may permit counsel to inquire into specific instances of a witness's conduct that "are probative

14

of the [witness's] character for truthfulness or untruthfulness." Therefore, to the extent that it is allowed by Rule 608, Plaintiff may still question Defendant Rickert about his disciplinary actions to impeach his character for truthfulness should he testify at trial.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's Motion in Limine to Exclude evidence of Defendant's disciplinary actions from Plaintiff's case-in-chief. (ECF No. 43).

SO ORDERED.

Dated:  October 23, 2023  s/Paul D. Borman
Paul D. Borman
United States District Judge