UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIELLE J. PLAIR,

     Plaintiff,

v.

TIMOTHY RICKERT,

     Defendant.

_____/

2:21-cv-12275
Paul D. Borman
United States District Judge

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE IMPROPER CHARACTER EVIDENCE (ECF No. 45)

## I. INTRODUCTION

Now before the Court is Plaintiff Brielle J. Plair's Motion *in Limine* to Preclude Improper Character Evidence pursuant to Fed R. Evid. 404(b), filed on September 28, 2023. (ECF No. 45). On October 6, 2023, Defendant Rickert filed his Response in Opposition to Plaintiff's motion. (ECF No. 49).

The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of these matters; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

1

## II. STATEMENT OF FACTS

**A. Kalieb Solomon's suicide and Plaintiff's current claim.**

On September 12, 2019, Kalieb Solomon was convicted of three counts of armed robbery in state court. (ECF No. 43, PageID.2540). Shortly thereafter, he was returned to his cell at the Macomb County Jail where he committed suicide by wrapping a damp towel around his neck and hanging himself. (*Id*.) While this was occurring, Solomon's cellmates, hearing Solomon gasping and shouting, yelled to get the attention of the correctional officers. (ECF No. 50, PageID.2769). Plaintiff alleges that Defendant Rickert, a correctional officer employed at the jail, answered the intercom system and, when the inmates told Rickert that Solomon was trying to kill himself, Rickert said "there's nothing I can do about it." (ECF No. 50, PageID.2769). When correctional officers checked on Solomon the next morning, he was already dead. (ECF No. 50, PageID.2770).

On September 27, 2021, Plaintiff Brielle J. Plair initiated this action by filing a Complaint asserting several claims against multiple Defendants all stemming from Solomon's suicide. (ECF No. 1). Plaintiff Plair is Solomon's former fiancé, and she brought this Complaint as Personal Representative of Kalieb Solomon's Estate on behalf of her and Solomon's minor child, Justice Brie Solomon. (ECF No. 1, PageID.1).

On August 2, 2023, this Court issued an order granting in part and denying in part Defendants Rickert and Macomb County's Motion for Summary Judgment. (ECF No. 37). Following this order, the only claim that remains in this case is Plaintiff's Fourteenth Amendment claim against Defendant Rickert for failing to take appropriate action to prevent Solomon's suicide. (ECF No. 43, PageID.2542).

**B. Plaintiff Plair's deposition and Kalieb Solomon's prior bad acts.**

Plaintiff Plair was deposed by Defendant's counsel on November 18, 2022. (Ex. C to Plaintiff's Motion to Preclude, ECF No. 45-4). Among the topics discussed at this deposition were:

> Solomon's criminal record and time spent in prison **(Ex. C, pp. 10-11, 22, 41)**, Plair's relationship with Solomon, including allegations of infidelity **(Ex. C, pp. 22)**, Solomon's threats and acts of violence **(Ex. C, pp. 13, 33, 38)**, a personal protection order that Plair requested in 2018 **(Ex. C, pp. 33-34)**, and the events that led to Solomon's charges and subsequent incarceration in 2019. **(Ex. C, pp. 32, 42-43)**.

(ECF No. 45, PageID.2613). The Court will briefly summarize Plair's testimony on each topic.

***i. Solomon's criminal record and time spent in prison.***

In 2016, when Solomon and Plaintiff first began seeing each other, Solomon had just gotten out of a several-year stint in prison stemming from an armed robbery conviction that occurred when he was sixteen years old. (ECF No. 45-4, PageID.2641–642). Plaintiff testified that Solomon told her that he had recently been incarcerated, but did not tell her what crime he had been incarcerated for. (ECF No.

3

45-4, PageID.2642). She only learned that Solomon had previously been convicted of armed robbery through her lawyer after Solomon's death. (*Id*.)

### *ii. Plair's relationship with Solomon.*

Plaintiff Plair also testified about certain negative aspects of her relationship with Solomon. First, counsel alleged that Plaintiff told several people that one of the reasons she left Solomon was because he was seeing another woman. (ECF No. 45-4, PageID.2653). Plaintiff could not recall whether this was true. (*Id*.) Next, Plaintiff testified about several violent acts and threats Solomon directed towards her. She testified that just before she left him, Solomon had become increasingly threatening and on one occasion, Solomon threatened to kill her. (ECF No. 45-4, PageID.2644). A day or two after this incident and still fearing for her life, Plaintiff filed for a personal protective order against Solomon. (ECF No. 45-4, PageID.2664). Finally, Plaintiff testified that after she moved out of Solomon's home, there was an altercation between herself, her sister, her mother, and Solomon, in which Solomon pushed her up against a car. (ECF No. 45-4, PageID.2669). She reported this incident to the Detroit Police. (ECF No. 45-4, PageID.2670).

### *iii. Solomon's most recent charges and his 2019 incarceration.*

Lastly, Plaintiff testified about Solomon's most recent criminal charges: the charges that led to his 2019 incarceration. Counsel asked Plaintiff if she was aware that, according to the allegations, Solomon had gone to a motel in Roseville,

4

Michigan and, while a mother and her young daughter were in the lobby, brandished a firearm and robbed the motel. (ECF No. 45-4, PageID.2673). Plaintiff stated that she had read about the incident, but was unaware that Solomon had used a firearm. (ECF No. 45-4, PageID.2674).

**C. Plaintiff's present motion.**

Plaintiff Plair anticipates that Defendant Rickert will discuss these topics at trial, and she brings this present motion to preclude Defendant from doing so pursuant to Fed. R. Evid. 404(b). (ECF No. 45, PageID.2613).

### III. Legal Standard

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, (1984); *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) ("The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures – including motions *in limine* –

in order to narrow the issues remaining for trial and to minimize disruptions at trial.").

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). It is a procedural vehicle "to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). "[A] preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). Motions *in* limine may promote "evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)).

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. "The rules regarding relevancy, however, are quite liberal[.]" *Robinson v. Runyon*, 149 F.3d 507, 512 (6th Cir. 1998). Under the Federal Rules of Evidence, "[e]vidence is relevant ... if it has *any* tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). The Court is not "permitted to consider the weight or sufficiency of the evidence in determining relevancy and 'even if [it]

6

believes the evidence is insufficient to prove the ultimate point for which it is offered, it may not exclude the evidence if it has even the slightest probative worth.'" *Robinson*, 149 F.3d at 512 (quoting *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1344 (6th Cir. 1992)).

Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is inadmissible "if there is a danger of *unfair* prejudice, not mere prejudice." *Robinson*, 149 F.3d at 514–15 (emphasis in original) (citing Fed. R. Evid. 403). The court has "very broad discretion in making this determination." *United States v. LaVictor*, 848 F.3d 428, 444 (6th Cir. 2017) (quoting *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012)).

## IV. Analysis

Plaintiff seeks to exclude three categories of evidence at trial: (1) evidence of Solomon's most recent criminal charges, conviction, and subsequent incarceration; (2) evidence of Solomon's prior criminal conviction and incarceration; and (3) evidence of Solomon's relationship with Plaintiff [1]. (ECF No. 45, PageID.2613).

---

[1] This includes evidence of Solomon's infidelity, evidence of threats and acts of violence Solomon directed at Plaintiff, and evidence that Plaintiff requested a personal protection order against Solomon. (ECF No. 45, PageID.2613).

Since Plaintiff seeks to exclude all three categories of evidence under the same evidentiary rule, Fed. R. Evid. 404(b), the Court will state the relevant legal standard once and apply it to each of the three categories in turn.

Under Fed. R. Evid. 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But, under Fed. R. Evid. 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

In the Sixth Circuit, district court judges use a three-step process to assess the admissibility of evidence under Rule 404(b):

> *First,* the district court must decide whether there is sufficient evidence that the other act[s] in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act[s] is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020).

Plaintiff does not contest that the evidence at issue satisfies the first step of *Dunnican*, but she maintains that this evidence does not meet steps two and three. (ECF No. 45, PageID.2614).

***i. Evidence of Solomon's most recent criminal conviction and incarceration.***

Plaintiff seeks to exclude evidence of Solomon's most recent conviction for armed robbery. (ECF No. 45, PageID.2613). This conviction is the reason Solomon was being held at the Macomb County Jail on the night of his suicide and the conviction carried a mandatory twenty-five-year prison sentence. (ECF No. 49, PageID.2746).

As to step-two of *Dunnican*, Defendant contends that this conviction will not be used as evidence of Solomon's character, but that it is probative of the amount of damages Plaintiff may be entitled to should she prevail at trial. (ECF No. 49, PageID.2746). Defendant argues, and Plaintiff does not dispute, that if a jury found for Plaintiff at trial, Plaintiff could recover damages "for the loss of financial support and the loss of the society and companionship" her daughter suffered because of Solomon's death. (*Id.*)

Defendant believes that Solomon's mandatory twenty-five-year sentence is "relevant to whether Solomon could have provided his daughter with financial support had he not committed suicide." (*Id.*) The Court agrees. The Court recognizes that Plaintiff Brielle Plair is not seeking damages for herself.

Solomon, who was facing twenty-five years of incarceration, could not have provided the same level of financial support to his daughter as he could have if he were free and able to work in the private sector during this period. *See Murphy v. Gilman*, 551 F. Supp. 2d 677, 686 (W.D. Mich. 2008) (recognizing that "if a prisoner

had been in the private sector, his economic damages would have been much higher" based, in part, on the prisoner's limited earning potential while incarcerated).

Defendant also argues that Solomon's mandatory sentence is relevant to show that "he could [not] have had a close relationship with his daughter while behind bars." (ECF No. PageID.2746). If true, this would impact the damages Plaintiff could recover for her daughter's loss of society and companionship resulting from Solomon's death.

This Court rejects the premise that Solomon could not have developed a close relationship with his daughter because he would have been incarcerated for the next twenty-five years of her life. If Solomon were alive, his daughter would be able to visit him, speak with him on the phone, and exchange letters with him. There is no basis to suggest that Solomon could not have provided his daughter with society and companionship via these means of communication.

Accordingly, the Court specifies that evidence of Solomon's most recent conviction only satisfies step two of *Dunnican* insofar as it is offered to show that Solomon's mandatory twenty-five-year sentence would have impacted his ability to support his daughter financially, not emotionally.

Next, the Court addresses whether the probative value of this evidence is substantially outweighed by its prejudicial effect under step three of *Dunnican*. First, the Court finds that Solomon's mandatory sentence is highly probative of the amount

of financial support he would have been able to provide his daughter, as discussed above.

However, were Defendant given free rein to describe to the jury, in detail, the specifics of the armed robbery that led to Solomon's conviction, there is a substantial risk that this would taint the jury's perception of Solomon, which would unfairly prejudice Plaintiff. This risk can be managed by only permitting Defendant to offer brief testimony that Solomon was facing a mandatory twenty-five-year sentence at the time of his suicide, but not permitting Defendant to offer testimony about the specifics of the crime that led to this sentence. Any further details would add no additional probative value, but would greatly increase the risk of unfair prejudice to Plaintiff.

For these reasons, the Court denies Plaintiff motion as it relates to excluding evidence that Solomon was facing a twenty-five-year mandatory sentence at the time of his suicide. The Court will allow Defendant to introduce evidence about Solomon's mandatory sentence provided that Defendant does not include details about the crime that gave rise to this sentence.

### ii. Evidence of Solomon's criminal record and time spent in prison.

Plaintiff next seeks to exclude evidence of Solomon's prior criminal record and his previous stint in prison. As to step two of *Dunnican*, unlike Plaintiff's most recent criminal conviction, which carried a mandatory twenty-five-year prison

sentence, Plaintiff's prior criminal record and earlier incarceration are not probative of Plaintiff's potential damages award. Solomon's past conviction and incarceration would have had no bearing on Solomon's future ability to provide financially for his daughter had he not committed suicide. Therefore, this evidence does not satisfy step two of *Dunnican*.

As to step three, even if this evidence were relevant to damages or any material issue other than Solomon's character, evidence of Solomon's prior criminal record is substantially more prejudicial than probative. The district court's decision in *Presley by & through Presley v. Irby*, 2008 WL 11414562 (W.D. Tenn. Apr. 4, 2008) is illustrative.

There, the decedent was killed in a car accident and the plaintiff filed suit against the other driver involved in the accident seeking damages for loss of consortium and economic loss, on behalf of the decedent's four minor children. *Id.* at *1. The plaintiff moved *in limine* to exclude evidence of the decedent's prior arrests and convictions. *Id.* In response, the defendant argued that these prior arrests and convictions, some of which included charges of child abuse and neglect, were relevant to damages because they demonstrated "the type of relationship [d]ecedent had with her children." *Id.* at *2.

The court, in excluding these prior arrests and convictions, stated:

> It certainly appears that [d]ecedent was an irresponsible, reckless, and often times neglectful parent, and there is no doubt that her children

suffered as a result of her actions. The fact remains, however, that [d]ecedent was still the children's mother. The evidence of [d]ecedent's arrests and convictions might lead the jury to reach a decision on an improper basis by using her arrests and convictions to find that her character and actions were in conformity therewith … therefore, the Court believes that the probative value of this evidence would be substantially outweighed by the danger of unfair prejudice under Rule 403.

*Id*. at *2.

The holding in *Presley* is especially illustrative because the decedent's criminal convictions there were much more relevant to the plaintiff's case then Solomon's prior convictions are to Plaintiff Plair's claim here. The decedent in *Presley* was convicted of child abuse and child neglect, which are arguably highly probative of the level of care and consortium the decedent might have provided her children had she lived. In contrast, Solomon's prior conviction for an armed robbery he committed when he was sixteen years old (ECF No. 45-4, PageID.2641–642) has comparatively little relevance to the relationship Solomon would have had with his daughter were he alive today.

If the *Presley* decedent's more relevant convictions did not satisfy the third step of *Dunnican*; then, *a fortiori*, Solomon's prior conviction for armed robbery does not either.

Defendant does not directly contest that evidence of Solomon's previous criminal conviction and incarceration does not satisfy *Dunnican*. Instead, Defendant argues only that he "should be able to present evidence disputing [Plaintiff's] claim

13

that [Solomon] was an upstanding citizen if [Plaintiff] open the door to such evidence at trial." (ECF No. 49, PageID.2748).

To support this argument, Defendant also cites to *Presley* in which the court explained that its order excluding evidence of the decedent's prior convictions would not prevent the defendant from introducing this evidence "should [the] [p]laintiff 'open the door' to this evidence by proffering and/or eliciting testimony to show that [d]ecedent was an upstanding citizen and a good [parent]." *Id*. at *3. The court stated that if this door were opened, the defendant "may seek to introduce other evidence to dispute that on rebuttal" and that "[t]hese issues will be best be ruled on by the district judge a trial." *Id.*

The Court adopts this sensible approach. Because evidence of Solomon's prior criminal history does not satisfy steps two and three of *Dunnican*, it must be excluded from Defendant's case-in-chief. However, if Plaintiff opens the door to such evidence by eliciting testimony that Solomon was an upstanding citizen with high moral character, the Court may allow some evidence of Solomon's criminal history and prior incarceration to rebut this testimony.

### iii. Evidence of Plair's relationship with Solomon.

Plaintiff also seeks to exclude evidence of her relationship with Solomon including allegations of Solomon's infidelity, threats and acts of violence he directed

towards her, and evidence that Plaintiff sought a personal protection order against Solomon. (ECF No. 45, PageID.2613).

This evidence does not satisfy step two of *Dunnican*. Plaintiff concedes that since she was not married to Solomon, she is not entitled to damages for her loss of society and companionship resulting from Solomon's death; rather, she may only recover damages based on her daughter's losses. (ECF No. 45, PageID.2615). Since Plaintiff's relationship with Solomon is not at all probative of the relationship her daughter may have developed with Solomon were he still alive, this evidence is not probative of Plaintiff's potential damages award.

Defendant suggests that, while "there is no indication that Solomon exhibited violence towards his daughter or would have done so had he not committed suicide," this is because "he never had the chance to because he was incarcerated from the time of his daughter's birth to the day he committed suicide." (ECF No. 49, PageID.2747). This statement implies that evidence of the threats and acts of violence Solomon directed at Plaintiff are relevant to Plaintiff's damages because they are probative of the relationship Solomon would have had with his daughter.

The Court rejects this argument under steps two and three of *Dunnican*. First, under this theory of admission, this evidence would be used as character evidence to prove future propensity with that character trait. Defendant would be introducing evidence of Solomon's past violent tendencies to suggest that, in the future, Solomon

would also have acted violently toward his child. This is prohibited under Fed. R. Evid. 404(b)(1) and thus does not satisfy step two of *Dunnican*.

Furthermore, even if Rule 404(b)(1) did not bar admission of this evidence, Solomon's history of threats and violence towards Plaintiff are, at best, only minimally probative of how he might have behaved towards his daughter in the future. In contrast, this evidence could negatively color the jury's perception of Solomon, which would be highly prejudicial to Plaintiff's claim. Therefore, this evidence does not satisfy step three of *Dunnican* either and it must be excluded from Defendant's case-in-chief.

The Court, however, once again adopts the caveat from *Presley* and notes that, if Plaintiff opens the door to this evidence by eliciting testimony that Solomon was an upstanding citizen and a model partner, Defendant may rebut this testimony by presenting limited evidence about Solomon and Plaintiff's relationship where relevant.

## V. CONCLUSION

For the above reasons, the Court, in the exercise of its discretion, **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion *in Limine* to Preclude Improper Character evidence (ECF No. 45):

(1) The Court **DENIES** Plaintiff's motion to keep out evidence of Solomon's most recent criminal conviction. The Court permits Defendant to present very limited evidence that Solomon was facing a mandatory twenty-five-year sentence at the time of his suicide, but prohibits Defendant from discussing the specifics of the conviction that led to this sentence.

(2) The Court **GRANTS** Plaintiff's motion to keep out evidence of Solomon's criminal history and previous incarceration, and excludes Defendant from introducing such evidence in Defendant's case-in-chief. However, if Plaintiff elicits evidence of Solomon's good character, Defendant may introduce evidence of Solomon's criminal past to rebut this testimony.

(3) The Court **GRANTS** Plaintiff's motion to keep out evidence of Solomon and Plair's relationship and excludes Defendant from introducing such evidence in Defendant's case-in-chief. However, if Plaintiff testifies to having had a good relationship with Solomon, Defendant may introduce some evidence of Solomon and Plair's relationship, including Solomon's threats and acts of violence towards Plair and the protective order Plair

sought against Solomon, to rebut this testimony.


SO ORDERED.


Dated: October 30, 2023                          s/Paul D. Borman
                                                 Paul D. Borman
                                                 United States District Judge